UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RAUL MENDEZ,<br><br>　　　　Plaintiff,<br><br>v.<br><br>ADA COMMUNITY LIBRARIES BOARD OF TRUSTEES; MARY DEWALT, Director of Ada Community Libraries; MERIDIAN LIBRARY DISTRICT BOARD OF TRUSTEES; and GRETCHEN CASSEROTI, Director of Meridian Library District,<br><br>　　　　Defendants. | Case No. 1:20-cv-00589-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Plaintiff Raul Mendez's Motion for Reconsideration. Dkt. 14. Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).

Upon review, and for the reasons set forth below, the Court DENIES the Motion.

MEMORANDUM DECISION AND ORDER - 1

## II. BACKGROUND

On December 28, 2020, Mendez initiated this lawsuit. Dkt. 1. Mendez alleges several claims under the First, Fourth, Fifth, and Fourteenth Amendments, the Civil Rights Act of 1871, and the Americans with Disabilities Act ("ADA"). Mendez also brings several state law claims, including fraud, constructive fraud, breach of the implied covenant of good faith and fair dealing, and negligent supervision and training. *See* Dkt. 1, at 1–2. Mendez's claims all relate to his use of certain resources at various public libraries in the Treasure Valley and the restrictions those libraries, and the state, imposed on patrons due to the Covid-19 pandemic.

On January 25, 2021, Defendants filed their Motion to Dismiss, arguing that "[t]he vast majority of these claims are subject to dismissal because Plaintiff lacks standing" in general, but also that Mendez specifically lacked standing "to challenge Covid-19 restrictions because he does not allege that Defendants have violated any of his cognizable rights." Dkt. 7-1, at 2. On June 11, 2021, the Court granted Defendants' Motion to Dismiss. Dkt. 13. The Court gave Mendez 30 days to file a Motion to Amend and a redlined Amended Complaint to show the changes he made to his Complaint. *Id*. The Court warned Mendez that "[i]n the absence of such filing, the claims will be dismissed with prejudice and this case will be close." *Id*.

Instead of filing an amended complaint, Mendez filed a Motion for Reconsideration claiming that he had discovered new evidence supporting his case and that the Court had made a clear error of law that was creating injustice. Dkt. 14, at 2–3. Defendants opposed

this Motion. Dkt. 15. Having received Mendez's Reply (Dkt. 16), the matter is now ripe for adjudication.

### III. LEGAL STANDARD

It is true that "neither the Federal Rules of Civil Procedure nor the Local Rules provide for a motion to reconsider." *Magnus Pac. Corp. v. Advanced Explosives Demolition, Inc.*, 2014 WL 3533622, at *1 (D. Idaho July 15, 2014). Nevertheless, the Ninth Circuit has instructed that courts should treat motions to reconsider "as motions to alter or amend under Federal Rule of Civil Procedure 59(e)." *Id.* (citing *Sierra On–Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1419 (9th Cir. 1984)). "While Rule 59(e) permits a district court to reconsider and amend a previous order, the rule offers an 'extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources.'" *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (quoting 12 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 59.30[4] (3d ed. 2000)); *see also Weeks v. Bayer*, 246 F.3d 1231, 1236 (9th Cir. 2001) (explaining that a party must overcome a "high hurdle" to obtain relief under Rule 59(e) since only "highly unusual circumstances" will justify its application).

Accordingly, a district court should only grant a motion for reconsideration if (1) it "is presented with newly discovered evidence," (2) it "committed clear error," or (3) "there is an intervening change in the controlling law." *Id.* (citation omitted). "A Rule 59(e) motion may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Id.* "Whether or not to grant reconsideration is committed to the sound discretion of the court." *See Navajo Nation v.*

*Confederated Tribes & Bands of the Yakama Indian Nation*, 331 F.3d 1041, 1046 (9th Cir. 2003) (citing *Kona Enter., Inc. v. Estate of Bishop*, 229 F.3d 877, 883 (9th Cir. 2000)).

### IV. DISCUSSION

#### A. Newly Discovered Evidence

Mendez claims he discovered new evidence proving the Court should have not granted the earlier Motion to Dismiss filed by Defendants. This alleged evidence consists of a single article from KTVB regarding the decision by the Ada County Commissioners to release Dr. Ted Epperly from his position on the Central District Health Board, a position he held for 15 years. Dkt. 14, at 6. Rod Beck, Chair of the Ada County Board of Commissioners, said that the Board of Commissioners was looking for someone with a "different perspective," while Commissioner Ryan Davidson said that he couldn't support Epperly's reappointment because Epperly had supported lockdowns and mask mandates. *Id*. at 7. Mendez highlighted Davidson's other, more pointed comments, such as his opinion that individual liberties had been suspended and that the Central District Health Department ("CDHD") "failed the scientific test," claiming that "none of the doomsday predictions ever came true." *Id*. at 3. Generously construing Mendez's rather confusing motion to reconsider, it seems Mendez is claiming that this is an admission by the CDHD that their policies needlessly violated individual civil liberties, and that such admissions support his claims.

The article at issue is dated June 28, 2021. As the Court filed its Order granting the Motion to Dismiss on June 11, 2021, the article arguably qualifies as "new." However, it certainly is not evidence. Even if it was evidence, it certainly does not meet the high hurdle

necessary for the Court to reconsider its prior decision for several reasons.

First, it is doubtful that this can be construed as an admission by the CDHD that their policies qualified as violations of individual civil liberties because of the simple fact that Davidson *is not on the CDHD*. He is an Ada County Commissioner. Davidson has no authority to speak for the CDHD. Second, the CDHD is not a part of this case. While their suggestions and policies have played a background role in the decisions made by Defendants, the CDHD's policies are not at issue in this case. In fact, Mendez distinguishes the Defendants' policies from the CDHD policies. Dkt. 1, at 25 ("Library leadership have indicated that they do not have to follow the CDHD ordinance exempting people with health conditions from wearing masks."). Third, Davidson's opinions are just that—opinions. They carry little to no weight in the instant case. This article is focused on the general topic of public health policies in Ada County, but is not related to the instant case of library closures, rendering it irrelevant.

The information in this article does not change the Court's legal opinion that Mendez lacks standing in this case. It also does not change his ability to meet the standard necessary for an ADA claim. The article does not change Mendez's ability, as a matter of law, to meet the requirements to proceed with Equal Protection/Discrimination claims. Accordingly, the Court holds that Mendez has not shown that he qualifies for Rule 59(e) relief as a result of any newly discovered evidence.

### B. The Correction of a Clear or Manifest Error in Law or Fact in Order to Prevent Injustice

Mendez also claims that the Court made a clear error by holding that he "didn't meet

the requirement of a Title II, III, VI, VII claim or IC 67-5909 where discrimination under protected classes is required." Dkt. 14, at 4. To support his claim, Mendez argues that there was no proof of discrimination based on any protected class in *Bush v. Gore*, 531 U.S. 98 (2000), and that Mendez, therefore, does not need to show a protected class to proceed. Mendez's interpretation of *Bush v. Gore* is incorrect.

> The phrase "equal protection of the laws" has never been precisely defined. In fact, the phrase is not susceptible of exact delimitation, nor can the boundaries of the protection afforded thereby be automatically or rigidly fixed. In other words, no rule as to what may be regarded as a denial of the equal protection of the laws which will cover every case has ever been formulated, and no test of the type of cases involving the Equal Protection Clause of the 14th Amendment can be infallible or all-inclusive. Moreover, it would be impracticable and unwise to attempt to lay down any generalization covering the subject; each case must be decided as it arises. The guaranty of equal protection of the laws is a pledge of the protection of equal laws, and therefore "equal protection of the laws" has been held to mean the protection of equal laws.

16B AM. JUR. 2D *Constitutional Law* § 818 (2021). Because the phrase "equal protection of the laws" is nebulous, there are some differences in the processes followed when applying the Equal Protection Clause to different situations. Unfortunately for Mendez, *Bush v. Gore* is one such example of these differences.

The right to vote is a strongly protected federal right and is protected by the Equal Protection Clause. *Bush*, 531 U.S. at 104–5. It also has a unique history of Equal Protection jurisprudence, distinct from other lines of Equal Protection cases. *Compare Gray v. Sanders*, 372 U.S. 368, 378 (1963), *with Washington v. Davis*, 426 U.S. 229, 239–40 (1976). Indeed, Equal Protection cases involving voting do not rely on typical class distinctions seen in other Equal Protection cases. For example, the Supreme Court has held

that:

> Once the geographical unit for which a representative is to be chosen is designated, all who participate in the election are to have an equal vote—whatever their race, whatever their sex, whatever their occupation, whatever their income, and wherever their home may be in that geographical unit. This is required by the Equal Protection Clause of the Fourteenth Amendment. The concept of "we the people" under the Constitution visualizes no preferred class of voters but equality among those who meet the basic qualifications. The idea that every voter is equal to every other voter in his State, when he casts his ballot in favor of one of several competing candidates, underlies many of our decisions.

*Gray*, 372 U.S. at 379–80. In other words, any discrimination between voters violates the Equal Protection Clause. As Mendez points out, the discrimination in *Bush v. Gore* did not rely on class labels seen in typical Equal Protection cases. However, and this is where Mendez's argument falls apart, such labeling was not *required* in *Bush v. Gore* because the issue involved the fundamental right to vote, and the discrimination did not break down along class lines. The discrimination occurred randomly, based on whichever poll worker was reviewing the ballot. *Bush*, 531 U.S. at 106. As such, even though there were no typical classes of discriminated individuals, the fundamentality of the right to vote necessitated the Supreme Court's Equal Protection analysis.

In short, *Bush v. Gore* does not apply in this situation. Mendez is still required to show that he was discriminated against based on a protected class to proceed on this claim and has failed to do so. Mendez's frustrations with a prior vote regarding the Levy are inadequate to invoke Equal Protection voting case law. For the type of discrimination claim that Mendez brings, he must show discrimination on a protected class and he has failed to

MEMORANDUM DECISION AND ORDER - 7

do so.[1] As such, the Court did not make a clear error of law in granting the Motion to Dismiss.

### C. Conclusion

In summary, Mendez has not shown any newly discovered evidence that would have had a material effect on the outcome of the Court's prior decision. Mendez has also not shown that the Court made a clear legal error by wholly misapplying or completely disregarding the controlling law. As such, his Motion to Reconsider is **DENIED**.

One of the driving forces for a Court's reluctance to grant motions for reconsideration is the need for the efficient use of judicial resources to prevent the Court from using its limited time and finite resources on relitigating issues over and over again. Mendez was given thirty (30) days by the Court to amend his Complaint; he chose, however, to file a Motion to Reconsider. Since the original 30 days have passed, and the Court is denying the Motion to Reconsider, Mendez may have 15 additional days to file the Motion to Amend Complaint called for in the original order (Dkt. 13).

## V. ORDER

The Court HEREBY ORDERS:

1. Mendez's Motion for Reconsideration (Dkt. 14) is DENIED.
2. Pursuant to Ninth Circuit precedent, Mendez may seek leave to amend his Complaint. In the event Mendez does so, he must concurrently file both a Motion

---

[1] Mendez's conclusory statement in his Motion for Reconsideration claiming that he did show he was discriminated against based on his race and medical condition will not be revisited here because the Court already addressed the topic in its prior Order.

to Amend, and a redlined Amended Complaint, showing the changes he has made to his Complaint, within fifteen (15) days of the date of this Order. In the absence of such filing, the claims will be dismissed with prejudice and this case will be closed. If Mendez files a Motion for Leave to Amend, Defendants will have opportunity to respond.

DATED: December 1, 2021

David C. Nye
Chief U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 9